# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| LOGARO LLC, | |
| Plaintiff, | **SEALED** |
| v. | Civil Action No. |
| ANGGREK K-US; ANKOMINA; ANYONGORA; APEXGOOD; AQUR2020; BDAIENITO; BEIYUANWANGLUO; BITEY; BLURTE; BLZZJTTT; BONING KING; CAIRUJIAQZUS; CHIHZHEN; CODALO-US; CO-LINK STORE; COMBORTE; CRAFT UR LIFE; CULYEE; DANYANTY; DEAYOU; DIEFENGWUMAOYIYOUXIANGONGSI; DUSHIW; DWEEKIY D1; FDF845; FIRECAO; FXCGIST; GANBORA; GENTLE AND POLITE; GRAETION; GTLZLZ; GUANGZHOULIANGKUASHANGMAOYOUXIANGON GSI; HAEDAXUA-US; HEGIYIA; HERRONK; HONGCULIER-US; HOOLHWA E-STORE; HUAERSELLER; HUANGXIANGUOCHENGDUGUANHUIOUCHUANGK EJIYOUXIANGONGS; HUANSHIJI; HWDJISW; HYRD-01; JAZUTAQ; JIAJIA1007; JIANGBU; JIEGUANG-US; JINGTU HOME; JUNXING STATIONERY; KIMISS 24K; KISUIN; KNOWSTORE; LANXUED; LCSYICN; LECXIN; LIAOWEV8; LIHENGE; LIN XIAOFENG202; LINUYA; LIUYUME; LIYISHUN; LUOCUTE; LXIAOHD3; MILLETPORRIDGE; MINZLAND; MSEINOPE-JP; MULOSU; NDNCZDHC; NEBANY; NIAVIBEN; NINGDE TU'ERLING; NUSIND; NVZBL; NXA-CYJ; OPVIMIN; OTENG; PAMKYA-US; PMLAND; PREXEY; QIXIACE; REDRIVER; RIWEEDRY; RUIQZHI; SALMUE; SEALHUAN; SEASAWW; SEINADA; SEVENMARTUS; SHEMNQUE; SHISHAOPRRO; SHOUJIANYUNKAI; SOROS; SURPRISE TREASURE SHOP; TERISASS; THEATLY; | |

TOKDJB-US; TONY'S GIFT CO., LTD.; TVOVO;
UNNIBELL; US-ZHNGJIUYUAN; VOWEEK OFFICIAL;
WANGSHANGGOU; WAVEBANG; WETOP; WHALE
ONLINE US; WONFAR; WONGSINGTON; WUHAOUS;
WUNYAQIN; XIAYIXUE; XINYUEA; XJINWALO;
XOREART; XUUYUU; YAHPETES; YINCEFY;
YIXINGDZ; YOEUAN; YOUHONG; YOUTHINK JP;
YUEJUN2022; YULINNET; YUN-MINGKAI; YUUANIE;
ZAICOLER; ZHANGENLIUKEJIYOUXIANGONGSI;
ZHENGYUN-US; ZONGJUNWANGLUO

    Defendants.

## **Complaint**

**NOW COMES** Logaro LLC ("Plaintiff"), by and through its undesigned counsel
and hereby brings its case against ANGGREK K-US, ANKOMINA, Anyongora,
ApexGood, Aqur2020, BdAienito, beiyuanwangluo, BITEY, Blurte, Blzzjttt,
Boning King, cairujiaqzus, Chihzhen, Codalo-US, Co-link store, Comborte, Craft
Ur Life, Culyee, Danyanty, DEAYOU, diefengwumaoyiyouxiangongsi, Dushiw,
Dweekiy d1, fdf845, Firecao, Fxcgist, Ganbora, Gentle and polite, Graetion,
Gtlzlz, guangzhouliangkuashangmaoyouxiangongsi, Haedaxua-US, Hegiyia,
herronk, hongculier-US, hoolhwa e-store, huaerseller,
HuangXianGuoChengDuGuanHuiOuChuangKeJiYouXianGongS, Huanshiji,
hwdjiSW, HYRD-01, Jazutaq, JiaJia1007, Jiangbu, JieGuanG-US, JINGTU
HOME, JUNXING Stationery, Kimiss 24k, kisuin, KnowStore, Lanxued, Lcsyicn,
Lecxin, LIANGLIN WU, Liaowev8, Lihenge, Lin xiaofeng202, Linuya, Liuyume,

Liyishun, Luocute, Lxiaohd3, milletporridge, MINZLAND, Mseinope-jp, Mulosu, NALIMEIMEILO, NDNCZDHC, Nebany, Niaviben, Ningde Tu'erling, nusind, NVZBL, NXA-CYJ, Opvimin, OTENG, Pamkya-US, PMLAND, Prexey, Qixiace, Redriver, Riweedry, Ruiqzhi, salmue, Sealhuan, Seasaww, Seinada, SevenMartUS, Shemnque, ShiShaoPrro, shoujianyunkai, SOROS, Surprise Treasure Shop, Terisass, Theatly, Tokdjb-US, Tony's Gift CO., LTD., Tvovo, unnibell, US-ZHNGJIUYUAN, Voweek Official, wangshanggou, Wavebang, Wetop, Whale Online US, Wonfar, Wongsington, wuhaous, Wunyaqin, Xiayixue, Xinyuea, xjinwalo, XoreArt, xuuyuu, Yahpetes, Yincefy, Yixingdz, Yoeuan, YouHong, youthink jp, Yuejun2022, Yulinnet, YUN-MINGKAI, Yuuanie, Zaicoler, zhangenliukejiyouxiangongsi, Zhengyun-US, and zongjunwangluo (collectively, "Defendants"), and alleges as follows:

**Introduction**

1.  This action has been filed by Plaintiff to combat e-commerce store operators who trade upon Plaintiff's reputation and goodwill by offering for sale and/or selling Counterfeit Products. Defendants create e-commerce stores operating under one or more identified above ("Seller Aliases") which are advertising, offering for sale, and selling products using infringing and/or counterfeit versions of the federally registered trademarks owned and/or licensed by Plaintiff (collectively, the "Counterfeit Products") to unknowing consumers

here in the United States. E-commerce stores operating under the Seller Aliases share characteristics establishing a logical relationship between them, and Defendants' unlawful activities arise out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid, or at least mitigate, liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their counterfeiting operation. Plaintiff is forced to file this action to combat Defendants' counterfeiting of its registered and trademarks, as well as to protect unknowing consumers from mistakenly purchasing Counterfeit Products over the Internet. Plaintiff has been and continues to be irreparably damaged through consumer confusion, a lack of quality control, and a loss of brand confidence, exclusivity, and unquantifiable future sales as a result of Defendants' actions and seeks injunctive and monetary relief.

## Jurisdiction and Venue

**2.** This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, et seq., 28 U.S.C. §§ 1331, 1338(a)-(b).

**3.** Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction pursuant to Federal Rule of Civil Procedure 4(k)(2) over Defendants since each of the Defendants directly targets

business activities toward consumers in the United States, through at least the

fully interactive e-commerce stores operating under the seller aliases identified

above (the "Seller Aliases"). Specifically, Defendants have targeted sales to

United States residents by setting up and operating e-commerce stores that

target United States consumers using one or more Seller Aliases, offer shipping

to the United States, accept payment in U.S. dollars and/or funds from U.S.

bank accounts and, on information and belief, have sold Counterfeit Products to

residents in the United States.

### Parties

4.  Plaintiff is a Chinese limited company.

5.  Plaintiff is a purveyor of various products and is responsible for the Let's Color

brand. Plaintiff markets, advertises, offers for sale, and sells select products

under the Let's Color brand, including ink pad products (collectively, "Genuine

Let's Color Products").

6.  The Let's Color brand has enjoyed success in international e-commerce.

Plaintiff's jewelry testing products are available for sale online.

7.  Plaintiff applied for and holds the U.S. trademark registration for Let's Color

(the "Let's Color Trademark").

| Reg. No. | Trademark | Goods / Services |
|---|---|---|

| 7,461,048 | *Let's Color* | CLASS 16: Ink pads; Ink pads for seals |
|-----------|----------------|------------------------------------------|

8. A true and correct copy of the U.S. Registration Certificate is attached hereto as **Exhibit 1**.

9. The above U.S. registration for the Let's Color Trademark is valid, subsisting, and in full force and effect.

10. The registration for the Let's Color Trademark constitutes *prima facie* evidence of its validity and of the exclusive right to use the Let's Color Trademark pursuant to 15 U.S.C. § 1057(b).

11. The Plaintiff Trademark signifies to the purchaser that Genuine Let's Color Products come from Plaintiff are manufactured to Plaintiff's quality standards. Plaintiff ensures that products bearing the Let's Color Trademark are manufactured to the highest quality standards.

12. The Let's Color Trademark has been continuously used and never abandoned. The innovative marketing of the Genuine Let's Color Products have enabled the brand to achieve widespread recognition. This widespread recognition, outstanding reputation, and significant goodwill have made the Let's Color Trademark a valuable asset of Plaintiff.

**13.** Plaintiff has expended significant resources in advertising, promoting, and marketing featuring the Let's Color Trademark. Genuine Let's Color Products have also been the subject of unsolicited publicity resulting from their high-quality, innovative design. As a result, products bearing the Let's Color Trademark are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from Plaintiff. Genuine Let's Color Products have become among the most popular ink pad products on the market. As such, the goodwill associated with the Let's Color Trademark is of incalculable and inestimable value to Plaintiff and Plaintiff has made efforts to protect its interests in and to the Let's Color Trademark.

### The Defendants

**14.** Defendants are individuals and business entities of unknown makeup who own and/or operate one or more of the e-commerce stores under at least the Seller Aliases identified above and/or other seller aliases not yet known to Plaintiff. On information and belief, Defendants reside and/or operate in the People's Republic of China or other foreign jurisdictions with marginal trademark enforcement systems or redistribute products from the same or similar sources in those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

**15.** On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed above. Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Plaintiff to discover Defendants' true identities and the exact interworking of their network. If Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

### Defendant's Unlawful Conduct

**16.** Marketplaces like Amazon allow merchants to quickly "set up shop" and flood the market with unauthorized goods which displace actual sales manufacturers would otherwise enjoy.

**17.** It has been estimated that e-commerce intellectual property infringement costs merchants in the U.S. alone nearly $41 billion[1] with Department of Homeland Security seizures of infringing goods increasing more than 10-fold between 2000 and 2018[2] and a street value of seized goods increasing 246% from 2017 to 2022.[3]

---

[1] The National Bureau of Asian Research, The Report of the Commission on the Theft of American Intellectual Property, at 9, Pub. The Commission on the Theft of American Intellectual Property 2017, available at https://www.nbr.org/wp-content/uploads/pdfs/publications/IP_Commission_Report.pdf, last accessed November 10, 2025

[2] U.S. Department of Homeland Security, *Combating Trafficking in Counterfeit and Pirated Goods Report to the President of the United States*, January 24, 2020.

[3] U.S. Customs and Border Protection Office of Trade, *FY 2022 Fact Sheet Intellectual Property Rights*, available at https://www.cbp.gov/sites/default/files/assets/documents/2023-

18. U.S. Customs and Border Protection ("CBP") reported that for Fiscal Year
2023, 90% of all CBP intellectual property seizures were smaller international
mail and express shipments (as opposed to large cargo containers) and 84% of
CBP seizures originated from mainland China and Hong Kong.[4]

19. Infringing and pirated products account for billions in economic losses,
resulting in tens of thousands of lost jobs for legitimate businesses and broader
economic losses, including lost tax revenue.

20. Third party service providers or e-commerce platforms like those used by
Defendants do not robustly subject new sellers to verification and confirmation
of their identities, allowing infringers to "routinely use false or inaccurate
names and addresses when registering with these e-commerce platforms."[5]

21. DHS has observed that "at least some e-commerce platforms, little identifying
information is necessary for [an infringer] to begin selling" and recommending
that "[s]ignificantly enhanced vetting of third-party sellers" is necessary.
Infringers hedge against the risk of being caught and having their websites

---

Mar/IPR%20Fact%20Sheet%20FY2022%20Final%20Draft%20%28508%29%20%28004%29%20%282%29.pdf, last accessed November 10, 2025
[4] U.S. Customs and Border Protection Office of Trade, *Intellectual Property Rights Fiscal Year 2023 Seizure Statistics*, available at, https://www.cbp.gov/sites/default/files/2024-06/ipr-seizure-stats-fy23-508.pdf, last accessed November 10, 2025
[5] Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020).

taken down from an e-commerce platform by preemptively establishing

multiple virtual storefronts.[6]

22. Since platforms generally do not require a seller on a third-party marketplace to

identify the underlying business entity, infringers can have many different

profiles that can appear unrelated even though they are commonly owned and

operated.[7]

23. Further, "E-commerce platforms create bureaucratic or technical hurdles in

helping brand owners to locate or identify sources of [infringement]."[8]

24. The ability of e-commerce sellers to effectively hide their identities makes it

very difficult for intellectual property enforcement and policing actions to be

undertaken by Plaintiff because simply taking advantage of platform takedown

procedures to remove infringing products would be an endless game of whack-

a-mole.  Sadly, a significant number of infringers have decided to trade upon

Plaintiff's reputation, goodwill, and valuable copyrights by selling and/or

offering for sale products in connection with the reproduction, distribution, and

display of Plaintiff's imagery.  The aggregated effect of the mass piracy that is

taking place has overwhelmed Plaintiff and Plaintiff's ability to police

---

[6] *Combating Trafficking in Counterfeit and Pirated Goods Report to the President of the United States*, at p. 22.
[7] Id., at p. 39.
[8] *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. at 186-187.

Plaintiff's rights against the many unknown defendants who are selling personal care products of unknown provenance.

25. A recent report from the U.S. Department of Homeland Security elaborated on the operation of cooperative pirating networks and the advantages such networks have over standalone retailers, noting that "counterfeits are being trafficked through vast e-commerce supply chains in concert with marketing, sales, and distribution networks" and "[t]he ability of e-commerce platforms to aggregate information and reduce transportation and search costs for consumers provides a big advantage over brick-and-mortar retailers.[9]  The report also found that [t]he ability to rapidly proliferate third-party online marketplaces greatly complicates enforcement efforts, especially for intellectual property rights holders" because it "allows counterfeiters to hop from one profile to the next even if the original site is taken down or blocked."[10]

26. Defendants have targeted sales to United States residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, accept payment in U.S.

---

[9] Department of Homeland Security, *Combating Trafficking in Counterfeit and Pirated Goods*, Jan. 24, 2020, at 10, available at
https://www.dhs.gov/sites/default/files/publications/20_0124_plcy_counterfeit-pirated-goods-report_01.pdf, last accessed November 10, 2025.
[10] Id. at 5, 12.

dollars and/or funds from U.S. bank accounts and, on information and belief, have sold Counterfeit Products to residents of the United States.

27. Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies. For example, many Defendants facilitate sales by designing the e-commerce stores (including product detail pages) operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers of their products (including Genuine Let's Color Products), outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases look sophisticated and accept payment in U.S. dollars and/or funds from U.S. bank accounts via credit cards and Amazon Pay. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer of Genuine Let's Color Products.

28. Plaintiff has not licensed or authorized Defendants to use the Let's Color Trademark and on information and belief none of the Defendants are authorized retailers of Genuine Let's Color Products.

29. Many Defendants deceive unknowing consumers by using the Let's Color Trademark without authorization within the content and text of their e-commerce stores to attract various search engines crawling the Internet looking for webpages relevant to consumer searches for Genuine Let's Color Products.

Other e-commerce stores operating under the Seller Aliases omit using the Let's

Color Trademark in the item title to evade enforcement efforts while using

product photographs containing the Let's Color Trademark that will trigger

their listings when consumers are searching for Genuine Let's Color Products.

30. E-commerce store operators like Defendants commonly engage in fraudulent

conduct when registering the Seller Aliases by providing false, misleading,

and/or incomplete information to e-commerce platforms to prevent discovery of

their true identities and the scope of their e-commerce operation.

31. E-commerce store operators like Defendants regularly simultaneously multiple

storefronts in violation of platform terms of service, or register or acquire new

seller aliases for the purpose of offering for sale and selling Counterfeit

Products. Such seller alias registration patterns are one of many common tactics

used by e-commerce store operators like Defendants to conceal their identities

and counterfeiting operation, and to avoid being shut down.

32. Even though Defendants operate under multiple fictitious aliases, the e-

commerce stores operating under the Seller Aliases often share unique

characteristics such as templates with common design elements which

intentionally omit any contact information or other information for identifying

Defendants or other seller aliases they operate or use. E-commerce stores

operating under the Seller Aliases include other notable common features, such

13

as use of the same registration patterns, accepted payment methods, check-out

methods, keywords, advertising tactics, similarities in price and quantities, the

same grammatical and spelling errors, and/or the use of the same text and

images. Additionally, Counterfeit Products for sale by the Seller Aliases bear

similar irregularities and indicia of being counterfeit, suggesting that the

Counterfeit Products were manufactured by and come from a common source

and that Defendants are interrelated.

33. E-commerce store operators like Defendants are in constant communication

with each other and regularly participate in QQ.com chat rooms and through

websites such as sellerdefense.cn and kuajingvs.com regarding tactics for

operating multiple accounts simultaneously, evading detection, pending

litigation, and potential new lawsuits.

34. Counterfeiters such as Defendants will typically operate under multiple seller

aliases and payment accounts so that they can continue operation despite the

enforcement efforts of a rightsholders like Plaintiff. E-commerce store

operators like Defendants maintain off-shore bank accounts and regularly move

funds from their financial accounts to off-shore accounts outside the jurisdiction

of this Court to avoid payment of any monetary judgment which might by

award by rightsholders like Plaintiff. Indeed, analysis of financial account

transaction logs from previous similar cases indicates that off-shore

14

counterfeiters regularly move funds from U.S.-based financial accounts to off-shore accounts outside the jurisdiction of this Court.

35. Upon information and belief, Defendants are working to knowingly and willfully import, distribute, offer for sale, and sell Counterfeit Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Plaintiff, have knowingly and willfully used and continue to use the Let's Color Trademark in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Products into the United States over the Internet.

36. Defendants' unauthorized use of the Let's Trademark in connection with the advertising, distribution, offering for sale, and sale of Counterfeit Products, including the sale of Counterfeit Products into the United States is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

**Count I - Trademark Infringing and Counterfeiting (15 U.S.C. § 1114)**

37. Plaintiff repeats, re-alleges, and incorporates by reference the allegations set forth in Paragraphs 1 through 36.

38. Plaintiff's trademark infringement claims against Defendants are based on their unauthorized use in commerce of counterfeit imitations of the federally-

registered Let's Color Trademark in connection with the advertising,

distribution, offering for sale, and sale of infringing goods.

39. The Let's Color Trademark is a distinctive mark, and consumers have come to

expect superior quality from products advertised, distributed, offered, or sold

under the Let's Color Trademark.

40. Defendants have advertised, distributed, offered to sell, sold, and are still

advertising, distributing, offering to sell, and selling products using counterfeit

reproductions of the Let's Color Trademark without Plaintiff's permission.

41. Plaintiff is the exclusive owner of the Let's Color Trademark.  Plaintiff's

registration for the Plaintiff Trademark is in full force and effect.

42. Upon information and belief, Defendants are aware and have knowledge of

Plaintiff's rights in the Let's Color Trademark and are willfully infringing it and

intentionally using counterfeit reproductions thereof.

43. Defendants' willful, intentional, and unauthorized use of the Let's Color

Trademark is likely to cause and is causing confusion, mistake, and deception

as to the origin and quality of the Counterfeit Products among the general

public.

44. Defendants' activities constitute willful trademark infringement and

counterfeiting under 15 U.S.C. § 1114.

45. Plaintiff has no adequate remedy at all and will suffer irreparable harm to its reputation and goodwill of its well-known Let's Color Trademark if Defendants' actions are not enjoined.

46. Defendants' wrongful advertisement, offering to sell, and sale of Infringing Products have directly and proximately caused injuries and damage to Plaintiff.

### Count II - False Designation of Origin (15 U.S.C. § 1125(a))

47. Plaintiff repeats, re-alleges, and incorporates by reference the allegations set forth in Paragraphs 1 through 46.

48. Defendants' advertising, distribution, offering for sale, and sale of Infringing Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection or association with Plaintiff or the origin, sponsorship, or approval of Defendants' Counterfeit Products by Plaintiff.

49. By using the Let's Color Trademark in association with the advertising, distribution, offering for sale, and sale of the Counterfeit Products, Defendants create a false designation of origin and a misleading representation of fact as to the true origin and sponsorship of the Counterfeit Products.

50. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Infringing Products to the general public

involves the willful use of counterfeit marks and is a willful violation of 15 U.S.C. § 1125.

**51.** Plaintiff has no adequate remedy at all and will suffer irreparable harm to its reputation and goodwill of its well-known Let's Color Trademark if Defendants' actions are not enjoined.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a. Using the Let's Color Trademark or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a Genuine Let's Color Product or is not authorized by Plaintiff to be sold in connection with the Let's Color Trademark;

   b. passing off, inducing, or enabling others to sell or pass off any product as a Genuine Let's Color Product or any other product produced by Plaintiff that is not Plaintiff's or is not produced under the authorization, control,

or supervision of Plaintiff and approved by Plaintiff for sale using the Let's Color Trademark;

c.  committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

d.  further infringing the Let's Color Trademark and damaging Plaintiff's goodwill; and

e.  manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear any of Plaintiff's trademarks, including the Let's Color Trademark, or any reproductions, counterfeit copies, or colorable imitations thereof;

2)  Entry of an Order that, upon Plaintiff's request, those with notice of the injunction, including, without limitation, any online marketplace platforms such as eBay, AliExpress, Alibaba, Amazon, Walmart, Wish.com, Etsy, Temu, TikTok, and DHgate (collectively, the "Third Party Providers") shall disable and cease displaying any advertisements used by or associated with Defendants

in connection with the sale of counterfeit and infringing goods using the Let's Color Trademark;

3) That Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the Let's Color Trademark be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4) In the alternative, that Plaintiff be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the Let's Color Trademark;

5) Plaintiff is further entitled to recover its attorneys' fees and full costs for bringing this action pursuant to 15 U.S.C. § 1117(a); and

6) Award any and all other relief that this Court deems just and proper.

Dated:          November 10, 2025

Respectfully submitted,

/s/Adam E. Urbanczyk
Adam E. Urbanczyk
(GA 094951)
AU LLC
444 W. Lake St. 17th Floor
Chicago, IL 60606
(312) 715-7312
adamu@au-llc.com
*Counsel for Plaintiff*